**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-398 (TSC)** |
| | : | |
| **JEAN ROBERT BAPTISTE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. Following defendant Jean Robert Baptiste's plea of guilty to two violations of 18 U.S.C. § 922(g)(1), Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (Counts 1 and 4), and two violations of 18 U.S.C. § 922(o), Unlawful Possession of a Machinegun (Counts 2 and 5), the defendant now faces a guideline sentence of 57 to 71 months of imprisonment, one to three years of supervised release, and a fine of $20,000 to $200,000. For the reasons set forth below, the Government respectfully recommends that the Court impose a sentence of 71 months of imprisonment followed by a three-year term of supervised release.

**PROCEDURAL HISTORY**

The defendant was initially arrested on November 26, 2022, and charged by Complaint on November 30, 2022. (ECF No. 1.) An initial one-count Indictment was returned on December 8, 2022. (ECF No. 4.)   On March 23, 2023, a five-count superseding Indictment was returned charging the defendant with the following five counts:

1

*For the defendant's possession of firearms, ammunition, and machinegun conversion devices seized during the October 19, 2022, search warrant at the defendant's residence*:

- Count One:  Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), for possessing of four firearms and various ammunition; and

- Count Two:  Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o), for possessing nine machinegun conversion devices.

*For trafficking the Micro draco firearm seized on October 19, 2022:*

- Count Three:  Trafficking in Firearms, in violation of for a violation of 18 U.S.C. § 922(o).

*For the defendant's possession of a loaded firearm equipped with a machinegun conversion device on November 26, 2022:*

- Count 4:  Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), for possessing the firearm and ammunition; and

- Count Two:  Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o), for possessing the machinegun conversion device.

On January 3, 2024, the defendant pleaded guilty to Counts 1, 2, 4, and 5 pursuant to a plea agreement. (January 3, 2024 Minute Entry; ECF Nos. 33-35.)

**ANALYSIS**

**I.    The Offense Conduct**

As summarized in the Statement of Offense in Support of Guilty Plea (ECF No. 34) and the Presentence Investigation Report (ECF No. 37, ¶¶ 14-19), the defendant's guilty plea acknowledged the following criminal conduct:

On October 19, 2022, Metropolitan Police Department ("MPD") officers executed a search warrant at the defendant's residence in the District of Columbia and recovered numerous firearms

2

and ammunition in the defendant's bedroom.  The defendant was present and residing at the premises at the time of the search warrant. Specifically, the following firearms, machinegun conversion devices, ammunition, and accessories were located in the defendant's bedroom:

- 1 Micro draco with drum magazine and 4 rounds of 7.62 x 39mm ammunition
- 1 30-round 7.62 caliber magazine
- 1 60-round 7.62 caliber magazine
- 1 Glock box with .40 caliber Glock 23 (S/N: AGMB711) with 1 round in the chamber and 13 rounds in a 13-round magazine
- 1 Glock box with 10mm Glock 20 (S/N: BMXP807) with 1 round in the chamber and 15 rounds in a 15-round magazine
- 1 10mm Glock 29 (with an obliterated serial number) with no rounds in the chamber and 14 rounds in a 15-round magazine
- 228 rounds of 9mm ammunition
- 92 rounds of 10mm ammunition
- 78 rounds of .40 caliber ammunition
- 45 rounds of 7.26 x 39mm ammunition
- 50 rounds of 38 special ammunition
- 21 rounds of 357 sig ammunition
- 9 Glock switch machinegun conversion devices
- 16 assorted 9mm, 10mm, .40 caliber, and 7.62 caliber magazines.

The Draco was purchased by another individual in Jonesboro, Georgia, on September 8, 2022, only approximately 42 days prior to being found in the defendant's bedroom.

Then on November 26, 2022, just 39 days later, MPD officers patrolling the area of the 4400 block of F Street SE, Washington, D.C., observed the defendant toss a firearm to the ground. The firearm was a Glock Model 19X 9mm, Serial No. BVHW427. It was loaded with one round in the chamber and 30 additional rounds of ammunition in a 31-round capacity magazine. In addition, the firearm was equipped with a machinegun conversion device.

The defendant was previously convicted of Conspiracy and Assault with a Dangerous Weapon in D.C. Superior Court Case No. 2011 CF1 004786, for which he was sentenced to 120 months of imprisonment in May 2013. Therefore, the defendant was not only prohibited from

possessing machineguns and conversion devices under the law, but was also prohibited from possessing firearms and ammunition on all relevant dates.

During a subsequent search of the defendant's cell phone recovered at his arrest, the FBI found photographs of numerous firearms and pricing information, firearms with machinegun conversion devices, and screenshots of conversations about Glock switch machinegun conversion devices. This showed that all on relevant dates, the defendant had knowledge of the essential characteristics and functionality of the Glock switch machinegun conversion devices in his possession and seized by law enforcement.

## II.    __Legal Background__

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Commentary, Background.

## III.    Defendant's Sentencing Guidelines Calculation

### A.    Defendant's Criminal History Category

The Government agrees with Probation that the defendant's criminal history score is six, which translates to Criminal History Category III (PSR ¶¶ 38-45).

### B.    Total Offense Level

The Government also agrees with Probation's assessment of the applicable Sentencing Guidelines as follows (PSR ¶¶ 23-37):

| | | |
|---|---|---|
| U.S.S.G. § 2K2.1(a)(4)(B) | Base Offense Level | 20 |
| U.S.S.G. § 2K2.1(b)(1)(A) | Specific Offense Characteristic *Number of Firearms (3-7)* | +2 |
| U.S.S.G. § 2K2.1(b)(4)(B) | Specific Offense Characteristic *Obliterated Serial Number* | +4 |

In addition, the Government agrees that a 3-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b) is appropriate in this case, resulting in a total adjusted offense level of 23, which translates to a Guidelines range of 57 - 71 months of imprisonment.

## IV.    Sentencing Recommendation

Pursuant to the Plea Agreement, the Government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a Guideline sentence in this case of

71 months of imprisonment for Counts 1, 2, 4, and 5. The Government further recommends that the Court impose a three-year term of supervised release to support and supervise the defendant's reentry following his term of imprisonment. The Government does not recommend that a fine be imposed.

### A.    The Nature and Circumstances of the Offense

The defendant's conduct in this case—first, illegally possessing a total of four firearms, nine machinegun conversion devices, hundreds of rounds of ammunition, and multiple large-capacity magazines and other accessories in the defendant's residence—followed by, only weeks later, carrying a loaded machinegun, with a large-capacity magazine, during the afternoon in the defendant's own residential neighborhood—presented a very clear and serious danger to the community. Moreover, it shows that the defendant was determined to not only possess firearms, but multiple firearms and multiple machineguns, without respect for the law or the safety of others. In addition, the defendant possessed the large-capacity magazines and ammunition needed to put the full dangerousness of those machineguns into effect.

Though the applicable Sentencing Guidelines account for the defendant's status as a prohibited person, the large-capacity magazines, and the multiple firearms possessed by the defendant, they do not specifically account for the number of machinegun conversion devices that he possessed, *that is* 10 Glock switches in 39 days. Law enforcement seized four Glock firearms from the defendant during that period, which means that he had two-and-one-half times the number of Glock switches needed to convert his own Glock firearms into machineguns. All of which are illegal and plainly present a grave danger to the safety of the community.

6

Additionally, the defendant's conduct showed a repeated violation of the same laws during a short period. The defendant was obviously undeterred by the October 19, 2022, search warrant at his residence, because he continued to carry a loaded machinegun shortly after.

**B.      The History and Characteristics of the Defendant**

The defendant's criminal history includes multiple previous convictions for firearms-related offenses, including for shooting and conspiring to murder rival crew members near the defendant's residence and near the neighborhood where the offenses in this case occurred. (PSR ¶¶ 39, 41, 42.) Specifically, in Case No. 2011 CF1 004786, the defendant conspired with associates to retaliate against a rival crew in the defendant's Benning Terrace neighborhood, and the defendant and others fired at and struck a victim. (*Id.* ¶ 42.) Significantly, the defendant's conduct in this case demonstrates that he is not deterred at all from possessing firearms. In fact, the opposite is true: the defendant armed himself with multiple firearms and machineguns in order to become even more dangerous. The defendant is clearly undeterred from carrying firearms and dangerous weapons in his own community. This repeated and dangerous criminal conduct warrants a high-end guideline sentence in this case.

**C.      The Need for the Sentence Imposed**

The recommended sentence is appropriate in order to reflect the seriousness of Mr. Baptiste's offenses in this case, to promote respect for the law and prohibition of illegal machineguns and firearms in the community, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The recommended sentence would also serve to protect the public from additional crimes by Mr. Baptiste while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Mr. Baptiste committing other offenses going forward. *Id.* § 3553(a)(2)(B)-(C). Moreover, the recommended sentence would support general deterrence for others who may

consider unlawfully possessing machineguns and firearms, which are particularly dangerous weapons that pose great harm to others in this District. *Id.* § 3553(a)(2)(B).

The Government also recommends that the defendant be sentenced to three years of supervised release following his release from the term of imprisonment in this case. The Government believes that a three-year term of supervised release after imprisonment would provide necessary support, supervision, and opportunity for the defendant reentry and rehabilitation. Due to the defendant's repeated offenses, a shorter term of supervision is not appropriate in this case.

## V.        The Government's Sentencing Recommendation

For the reasons described above, the Government respectfully recommends that the Court impose a Guideline sentence of 71 months of imprisonment for Count 1, 2, 4, and 5, to be followed by three years of supervised release. A significant period of imprisonment is required and warranted in this case based on the defendant's repeated and dangerous conduct. In addition, this conviction and sentence should finally serve to deter the defendant from additional crimes in the future and also serve to generally deter other persons from committing similar offenses in the community.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Thomas G. Strong*
ALICIA M. LONG
THOMAS G. STRONG
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
202-252-7063
thomas.strong@usdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on May 17, 2024.

By:    */s/ Thomas G. Strong*
Thomas G. Strong
Assistant United States Attorney

1